JONES, GDN., APPELLANT, *v.* BUTLER, APPELLEE.

(No. 1056—Decided July 29, 1942.)

*Messrs. Sieman & Sieman,* for appellant.
*Mr. G. H. Birrell,* for appellee.

NICHOLS, J.   This action was instituted in the Common Pleas Court of Trumbull county by James B. Jones, duly appointed guardian of the estate of Leroy Goldner, a feeble-minded person, against Duane L. Butler for damages sustained by Leroy Goldner when struck by an automobile driven by defendant, on a much traveled public highway in Trumbull county on March 6, 1940, at about 8:30 p. m.

The cause is now in this court on appeal by plaintiff on questions of law from a judgment of the trial court in favor of defendant.

The cause was before this court once before, a verdict and judgment previously rendered in favor of defendant being, by the concurrence of all members, reversed and a new trial granted on grounds stated in the opinion written by Judge Carter, among which grounds was that this court found the verdict and judgment manifestly against the weight of the evidence.

We will refer herein to Leroy Goldner, the real party in interest, as plaintiff, and to Duane L. Butler as defendant.

Although Judge Carter has, in the former opinion written herein, stated the claims of the parties, the pertinent evidence may be here summarized as follows:

At the time he was struck by defendant's automobile and severely injured, plaintiff was a feeble-minded person twenty-six years of age but having mentality not exceeding that of a six-year old child, according to the testimony of Dr. C. C. Kirk, superintendent of the state feeble minded institution at Orient, Ohio, at which institution plaintiff had previously been an inmate and

from which had recently theretofore been permitted to leave.

At the time he was injured, plaintiff was on the highway, facing in a westerly direction, the main question in the case being whether plaintiff was walking on the highway a sufficient length of time so that, in the exercise of due care and in the compliance with the assured clear distance ahead provisions of Section 12603 (now Section 6307-21), General Code, defendant should have stopped his car before striking plaintiff or have veered to the left and thus avoided the accident.

The highway, 18 feet in width, was straight and level for a considerable distance on either side of the point of impact, there being no obstructions to the view of defendant as he approached the point of impact with plaintiff. The weather and atmosphere were clear and the windshield and windows of defendant's car were clear and unobstructed. The accident happened outside any municipality. There were no sidewalks or cinder paths or other walks provided for pedestrians on either side of the roadway. On both sides of the road were deep ditches and people were accustomed to walk on the traveled portion of the road. Defendant was familiar with the highway having traveled over it many times.

Defendant testified that he was driving between 40 and 45 miles per hour; that he did not slow down or apply his brakes until immediately before the impact; and that he did not see plaintiff until plaintiff straightening up, suddenly appeared, facing defendant, ten feet in front of defendant's car and one and one-half feet from the edge of the road.

Other persons, called as witnesses, testified that defendant was driving fast or "very fast," and that defendant did not bring his car to a stop after the impact until it had traveled a considerable distance, estimated

at about 300 feet. In a statement made by defendant and written down by plaintiff's counsel, which defendant admits he may have made, he stated that plaintiff "was walking sort of bent over, and just as I got to him he seemed to straighten up." However, on the trial, defendant testified: "I could not say I saw him walk, I never saw him take a step, but his face was toward me." Being asked how many steps he saw plaintiff take, defendant answered, "None."

Although the evidence is in conflict as to whether there were any other cars on the highway at or about the time of the impact, defendant testified there was a car coming from the opposite direction with bright and blinding lights, but that he could see a long distance ahead of him on his side of the road, the lights on his car being such as are required by law and his car being in good condition.

It is the claim of plaintiff that defendant failed to keep a careful lookout ahead; that defendant was driving at a high and dangerous rate of speed and at a greater speed than would permit him to bring his car to a stop within the assured clear distance ahead; that he failed to stop; that he failed to blow his horn; and that he failed to avoid striking plaintiff by passing on the left of him, the highway being unobstructed at that time.

As stated above, the controversy between the parties revolves largely around the proposition whether plaintiff was walking on the highway a sufficient time before the impact so that, in the exercise of due care and compliance with the mandatory provisions of the statute, defendant should have seen him and either stopped his car before striking plaintiff or passed to the left and thus have avoided striking him.

Plaintiff, due to his mental condition and inability to appreciate the nature of an oath, did not testify. Except as shown by the quoted testimony of defendant,

there is no witness who testified that plaintiff was walking on the highway before the impact. Defendant claims he was keeping a proper lookout ahead and did not see plaintiff on the highway in time to stop or otherwise avoid striking him.

Defendant's sister was in the car beside him and testified she did not see plaintiff until the instant of the impact, although she claims to have been looking ahead.

It is the contention of defendant that the only logical conclusion and proper inference to be drawn from the evidence is that plaintiff was nowhere upon the road as defendant's car approached the place of impact; that the greater probability was that plaintiff "scrambled" onto the road from the deep ditch alongside thereof and was just straightening up when defendant first saw him ten feet away but too late for defendant to avoid striking him; and that, since defendant testified he was keeping a proper lookout ahead and that the lights on his car were such that he could and would have seen plaintiff on the highway if he had been walking thereon, the jury was warranted in finding that plaintiff suddenly came upon the highway directly in front of defendant's automobile, thereby cutting down his assured distance ahead and that, without fault upon the part of defendant, it was impossible to avoid striking plaintiff.

Many claimed errors are assigned for the reversal of the judgment of the trial court. We can not reverse a second time upon the weight of the evidence; neither can it be said that the record contains no evidence to support the claims of defendant. We thus dispose of the claim of plaintiff that the verdict is not sustained by any evidence whatsoever and the further claim that there was prejudicial error on the part of the trial court in overruling plaintiff's motion for directed ver-

dict in his favor, at the conclusion of all the evidence. Further, we do not find reversible error in the trial court permitting defendant, after plaintiff made such motion, to withdraw defendant's motion for directed verdict and to submit the case to the jury.

It is further strenuously contended by counsel for plaintiff that there was such misconduct on the part of counsel for defendant, in his argument to the jury and throughout the trial, that plaintiff was prevented from having a fair trial; and that reversible error was committed by the trial court in his rulings admitting such prejudicial matter, all of which plaintiff claims resulted in the jury rendering its verdict under the influence of passion and prejudice.

Among other reasons for reversing the judgment, when this case was previously before this court, was that we found that defendant's counsel had been guilty of improper and prejudicial misconduct in his argument to the jury, although we did not specifically set forth in the opinion the objectionable portions of the argument.

It is now claimed by plaintiff that defendant's counsel ignored the warning then given by this court and persisted in following the same line of argument as before.

We have carefully read the argument of counsel for defendant as contained in the record, and have noted the many objections made thereto by counsel for plaintiff, only one of which was sustained by the trial court. This objectionable argument was an attempt upon the part of counsel for defendant to induce the jury to believe that James B. Jones, who brought this action on behalf of his ward and who had been duly appointed guardian of the estate of his ward by the probate court, was not the proper party to bring the action, counsel for defendant arguing that Section 1841-1 and Section

1841-2, General Code, vested the sole and exclusive guardianship of Leroy Goldner in the "Ohio Board of Administration."

The able counsel for defendant is well aware, we feel sure, that such argument to the jury was not proper. This was a legal question not for the jury, to be raised only by demurrer to the petition on the ground that Jones was not a proper party-plaintiff, or by other procedure directed solely to the attention of the court. While this argument of counsel was improper, we conclude that, due to the explanation made by the trial court at the time, there was not such prejudice to plaintiff as warrants the granting of a new trial. Such argument to the jury should not be repeated.

Another matter claimed to be misconduct on the part of counsel for defendant relates to the so-called effort of counsel to create in the minds of the jury the impression that plaintiff's attending physician was guilty of malpractice, as the result of which plaintiff's leg had to be amputated.

The rule which should have been observed by the trial court and counsel for defendant is very clearly stated in 31 Ohio Jurisprudence, 470, Section 213, and authorities there cited, including *Loeser* v. *Humphrey,* 41 Ohio St., 378, 52 Am. Rep., 86; *Seymour* v. *Carroll,* 43 Ohio App., 60, 182 N. E., 647; and *Heintz* v. *Caldwell,* 16 C. C., 630, 9 C. D., 412.

As stated in Ohio Jurisprudence, as cited above, the original tort-feasor is liable for all damages proximately flowing from the negligent act, including such as are caused by lack of professional skill on the part of the physician whom the plaintiff, in the exercise of due diligence, obtained to treat the injuries. The injured person is bound to use ordinary care in the choice of a physician, but it is sufficient if he employs a physician of good standing and reputation.

It can hardly be said that Leroy Goldner, a feeble-minded person, having the mentality of a child of six years of age, severely injured as he was as the result of having been struck by defendant's automobile, could be charged with lack of ordinary care in choosing a physician, when the record discloses that the defendant himself took the boy to the hospital, went with him into the emergency room, and stayed with him there until he was removed from the emergency room and all the reports made. Certainly this feeble-minded plaintiff had no more to do with the selection of a physician for the treatment of his injuries than did the defendant.

There is no evidence in the record which would warrant a claim that Dr. Sparks was other than a reputable physician, entitled to practice in the hospital to which defendant took plaintiff to be treated for his injuries. It was proper for the parties to show the treatment given by the attending physician in connection with plaintiff's injuries, but it was highly improper for counsel for defendant in his argument to attempt to sway the jury into the belief that plaintiff's damages were not the result of being struck by defendant's automobile. However, in this connection it is proper to say that counsel for plaintiff are in part responsible for the making of such improper argument by counsel for defendant in that, in the petition filed in this case, counsel for plaintiff, apparently with knowledge to the contrary, alleged, in substance, that plaintiff's impaired mentality and loss of earning capacity were due to the injuries received when struck by the automobile of defendant, when it must have been well known that plaintiff had been feeble-minded from birth and had never had an earning capacity.

We find no error in admission of evidence on behalf of defendant for the purpose of showing that plaintiff never was able to work, never had an earning capacity,

and had been a public charge practically all his life. True, the effect of this evidence and argument of counsel may have been to lead the jury to believe that a verdict in plaintiff's favor would be of no particular financial benefit to him, but defendant was not on that account to be deprived of the right to show the actual facts relating to plaintiff's physical and mental condition.

It is our opinion that the trial court erred in refusing to permit plaintiff to produce the hospital record. In view of the fact, however, that other evidence was admitted on behalf of plaintiff sufficient to show all that the hospital records would have shown if admitted, we can not find that these records would likely have caused a different verdict by the jury had such records not been excluded by the trial court.

Further reference will be made to the argument made by counsel for defendant to the jury, when we pass upon the alleged errors committed by the trial court in its charge to the jury.

At the request of counsel for defendant, the trial court gave to the jury before argument certain written instructions, among which were the following:

Charge No. 1. "The headlights which the law requires an automobile to carry are intended both to aid the driver in seeing the road over which his car is to travel, and also to assist others to see and observe the approach of such automobile; and I say to you that the driver of an automobile, in the absence of notice or knowledge to the contrary, who himself is obeying the laws and rules applying to motorists using the highways of the state of Ohio, may assume that other persons who may be also using said highway, upon observing the approach of his automobile upon the highway will use ordinary care for their own safety."

Charge No. 2. "In the absence of notice or knowl-

edge to the contrary defendant had the right to assume that no person would step into or upon the public highway directly in front of his automobile while he was driving upon a straight open road in the country.''

Charge No. 4. ''Although the parties in this law suit apparently now agree that Leroy Goldner is a person of defective mentality, and is not bound to the same standard of care and caution as a normal person of his age would be, yet this fact, if it be a fact, did not affect the degree of care required of Duane Butler with respect to said Leroy Goldner unless or until said Duane Butler knew, or in the exercise of ordinary care should have known, of the deficiencies of said Leroy Goldner.

''And I therefore instruct you that if you find from the evidence in this case, that defendant, Duane Butler, had no knowledge of, and in the exercise of ordinary care could not have acquired knowledge of, the defective mental condition of said Leroy Goldner before the accident, then I say to you, that defendant, Duane Butler, in the absence of notice or knowledge to the contrary, was bound to use no higher degree of care than 'ordinary care' with respect to said Leroy Goldner, and until he received such knowledge had the right to assume and expect that said Leroy Goldner would also use ordinary care for his own safety.''

This court is in disagreement as to whether the quoted charges numbered 1 and 2 are erroneous and prejudicial. The majority hold to the view that the trial court did not err in giving these two charges. The writer of this opinion holds that these two charges are erroneous and prejudicial in that they are abstract and misleading in the light of the evidence.

This court unanimously agrees that the charge numbered 4 is erroneous and clearly prejudicial. In connection with the argument of counsel for defendant

upon the same subject, the giving of this charge requires a reversal of the judgment of the trial court, since it affects both the negligence of the defendant and contributory negligence of the plaintiff, whereby the two issue rule does not apply.

Charge No. 4 would destroy the mandatory character of the assured clear distance ahead provision of Section 12603 (now Section 6307-21), General Code. It implies that the motorist may disregard the mandatory requirement of the statute and rely upon the assumption that a pedestrian, standing or walking upon the highway in a place where he has a right to be, will abandon his rightful position in the exercise of ordinary care for his own safety and relieve the motorist of the duty to comply with the provisions of the statute.

It seems that the pedestrian using the highway in a place and manner in which he has that right may assume, in the absence of notice or knowledge to the contrary, that the motorist will observe the mandatory duty cast upon him by the statute; and only upon notice or knowledge to the contrary would the pedestrian be required to abandon his rightful place on the highway in order that he might avoid the implication of failure to exercise ordinary care for his own safety. While both motorist and pedestrian have the right to use the highway, the right of the motorist is subject to the mandatory requirement of the statute, failure to comply with which, in the absence of legal excuse therefor, constitutes negligence *per se,* while the right of the pedestrian is limited only by his duty to exercise ordinary care for his own safety under all the circumstances, including his right to assume, in the absence of notice or knowledge to the contrary, that the motorist will operate his vehicle at such speed as will enable him to stop the same within the assured clear distance as required by the statute. It should be readily seen that

if each has the right to the assumption referred to, the duty of each is that of ordinary care, which is not true as to the motorist.

In his argument to the jury counsel for defendant strenuously argued the assumptions referred to in the charges given by the trial court, and it seems to the writer that these charges and argument are directly responsible for the verdict of the jury.

Defendant was required to observe the mandatory provisions of the speed statute with reference to this feeble-minded plaintiff whether he knew plaintiff was a feeble-minded person or not.

The first paragraph of charge No. 4 is not objectionable, but in the last paragraph of this charge the court specifically told the jury that defendant, in the absence of notice or knowledge of the defective mental condition of plaintiff before the accident, was bound to use no higher degree of care than ordinary care. This language relieved Duane Butler of negligence *per se* even though the jury should find that he was operating his automobile at the time and place at a greater speed than would permit him to stop the same within the assured clear distance ahead. The charge takes negligence *per se* entirely out of the case merely because defendant did not know and in the exercise of ordinary care could not have ascertained the defective mental condition of plaintiff, and this proposition was strenuously argued by counsel for defendant to the jury.

We find no error in the trial court giving to the jury before argument defendant's written request No. 3, which is as follows:

"I further instruct you, that an exception exists to the assured clear distance rule when without fault of the driver of a motor vehicle such assured clear distance ahead is suddenly cut down, or lessened by the entrance within such clear distance ahead and into his

path or line of travel of some obstruction, or person which renders him unable, in the exercise of ordinary care, to avoid colliding therewith.''

This charge is substantially in the language approved by the Supreme Court in *Smiley* v. *Spring Bed Co.*, 138 Ohio St., 81, 33 N. E. (2d), 3.

We find no error in the trial court submitting to the jury the question of negligence of the plaintiff, Leroy Goldner, and that it is immaterial whether the court denominated the same mere negligence or contributory negligence. Of course, the degree of care required to be exercised by Leroy Goldner was that of a person having, as shown by the evidence, the mentality of a child six years of age, and the educational attainments and experience as shown by the record.

Judgment reversed and cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

CARTER, P. J., and PHILLIPS, J., concur.