BENDNER ET AL., APPELLANTS, *v.* CARR, APPELLEE.

(No. 86-CA-102—Decided August 14, 1987.)

*Richard W. Stuhr,* for appellants.
*Miller, Finney & Clark* and *Marshall L. Clark,* for appellee.

WOLFF, J. On August 1, 1983, plaintiff David Bendner was driving southbound on Xenia Street in Yellow Springs, Ohio. His wife, plaintiff Carol Bendner, was in the passenger seat. The defendant, Lisa Carr, was travelling northbound on Xenia Street. Carr made a left turn at the intersection of Xenia and Cory Streets, and was struck by the vehicle operated by Bendner.

Carol Bendner was not wearing her seat belt. At impact, her left knee struck the dashboard. Neither David Bendner nor Lisa Carr was injured.

Carol Bendner first consulted her family physician, Dr. Ronald Taylor, who prescribed medication and range-of-motion exercises. When the pain and swelling persisted, Taylor advised her to consult a specialist. She contacted an orthopedic surgeon, Dr. William Donahue. After several office visits, Donahue performed an arthroscopic examination on January 4, 1984. Donahue testified that the arthroscopy revealed no evidence of injury or abnormality in the left knee. The pain and swelling persisted, and Bendner consulted another orthopedic surgeon, Dr. Michael Kessler, on July 16, 1984. Kessler also prescribed medication and exercises, but after several visits this treatment proved ineffective. Kessler then performed an arthroscopic examination on March 22, 1985, at which time he discovered a tear in the cartilage of the knee. Kessler videotaped this operation at the request of Bendner's attorney. Kessler removed the damaged cartilage. Kessler subsequently diagnosed Bendner as suffering from Reflex Sympathetic Dystrophy ("RSD"), "a disease process affecting the form or trophic nature of an extremity." Kessler subsequently referred Bendner to Dr. David Leak, an anesthesiologist specializing in pain management. Bendner subsequently underwent three lumbar sympathetic blocks, two lumbar epidural blocks, a myoneuro block to the knee and intravenous resurpine therapy.

The Bendners filed this suit on July 24, 1985, alleging that Carr had negligently failed to yield the right of way. Prior to trial, the plaintiffs moved *in limine* to exclude all evidence of Bendner's non-use of her seat belt. The trial court ruled that the evidence was admissible, and ruled that R.C. 4513.263(G), which prohibits introduction of such evidence, was unconstitutional.

The case was tried to a jury, and the defendant introduced expert testimony to the effect that if Bendner had been wearing her seat belt, she would have sustained *no* injury. The trial court did, however, direct a verdict in favor of the plaintiffs on the issue of the defendant's negligence. The directed verdict was granted at the end of the plaintiffs' case, the court indicating that the issues of proximate cause and damages would be for the jury to decide. There was also evidence introduced by the defendant from which the jury could have concluded that the RSD could have been caused by the arthroscopy performed by Dr. Kessler.

The jury was instructed as to comparative negligence. The jury returned an award of $8,050 in damages for Carol Bendner; no damages were awarded to her husband for loss of consortium. In answering the interrogatories as to comparative negligence, the jury found that Carol Bendner was fifty-one percent comparatively negligent and that Carr was forty-nine percent negligent. A general verdict was therefore returned in favor of the defendant. The Bendners appeal, asserting the following assignments of error.

"I. The trial court erred in permitting appellee to introduce evidence

concerning appellant Carol Bendner's non-use of a seat belt.

"A. The trial court erred in ruling that 4513.263(G) of the Ohio Revised Code is unconstitutional.

"B. The majority common law view prohibits the introduction of evidence concerning a plaintiff's non-use of an available seat belt.

"II. The trial court erred in instructing the jury on the issue of comparative negligence inasmuch as the court directed a verdict in favor of appellants on the issue of appellee's negligence.

"III. The trial court erred in refusing to instruct the jury that appellee was liable for all injuries sustained by appellant Carol Bendner flowing from the initial injury sustained in the August 1, 1983 automobile accident.

"IV. The jury's verdict was against the manifest weight of the evidence.

"V. Appellants are entitled to a new trial on the issue of damages only."

We find all of these assignments of error well-taken and, therefore, reverse.

The threshold issue in this case is whether the evidence of Carol Bendner's non-use of a seat belt was properly admitted. The trial court allowed such evidence, pursuant to a judgment entry dated November 25, 1986. In this entry, the judge held that there was a common-law duty to mitigate damages, which included a duty to protect one's own safety by wearing a seat belt. The court then went on to rule that R.C. 4513.263(G) was unconstitutional as a violation of due process and equal protection in that it deprived the defendant of an available defense, to wit: the seat-belt defense. The court also ruled that this section violated "the spirit, if not the letter, of [R.C.] 2315.19, our comparative negligence section."

R.C. 4513.263, which became effective May 6, 1986 (141 Ohio Laws, Part I, 73, 77), provides that the wearing of a seat belt is mandatory, and that failure to do so is punishable by a small fine. This case involves R.C. 4513.263(G)(1), which addresses civil actions, and which provides:

"* * * *[T]he failure of a person to wear* all of the available elements of *a properly adjusted occupant restraining device* or to ensure that each passenger of an automobile being operated by the person is wearing all of the available elements of such a device, in violation of division (B) of this section, *shall not be considered or used as evidence of negligence or contributory negligence, shall not diminish recovery for damages in any civil action involving the person arising from the ownership, maintenance, or operation of an automobile, shall not be used as a basis for a criminal prosecution* of the person other than a prosecution for a violation of this section *and shall not be admissible as evidence in any civil or criminal action* involving the person other than a prosecution for a violation of division (B) of this section." (Emphasis added.)

We have been unable to find in the record any evidence of an argument attacking the statute's constitutionality. Defense counsel only asserts in his trial brief that "I think we can satisfactorily say that Section (G) of the Seatbelt Legislation is unconstitutional * * * in that it deprives defendant Lisa Carr, of due process of law, and violates her right of equal protection of the laws."

A legislative enactment is presumed to be constitutional, and unconstitutionality must be shown beyond a reasonable doubt. *Roosevelt Properties Co.* v. *Kinney* (1984), 12 Ohio St. 3d 7, 13, 12 OBR 6, 11, 465 N.E. 2d 421, 427. The test used to measure a statute's validity under the Due Process Clause is whether the statute has

a reasonable relationship to a proper legislative purpose, without being arbitrary or discriminatory. *Gates* v. *Brewer* (1981), 2 Ohio App. 3d 347, 349, 2 OBR 392, 395, 442 N.E. 2d 72, 76.

There is no contention that the seat belt statute does not serve a proper purpose. The legislature could have rationally concluded that R.C. 4513.263 would serve to lessen the annual carnage on Ohio roads. Carr's argument, asserted for the first time on appeal, is that the effect of R.C. 4513.263(G) is to discourage seat belt use because non-use will not be admissible in civil trials. In essence, Carr argues that this subsection promotes non-use because evidence of non-use cannot be used to lessen damages.

While the urgency of compliance with subsection (B), which prohibits non-use, is arguably diluted by subsection (G), we reject Carr's contention that subsection (G)(1) is therefore irrational, and, hence, unconstitutional.

The legislature was fully aware of the "seat-belt defense" when it enacted R.C. 4513.263; the House Bill introduced provided for admissibility, but the Senate Bill, which was enacted, did not. It is clear that the legislators made a conscious choice to preclude such evidence. Note, S. 54: Ohio's Seat Belt Law (1986), 12 U. Dayton L. Rev. 473, 482.

The legislature undoubtedly concluded that seat-belt use was desirable, and that although the enactment of a law providing for small fines would encourage people to "buckle up," an injured plaintiff should nevertheless not be denied recovery when involved in a collision with a negligent tortfeasor. This case is a perfect example of the harsh results possible under Carr's view of R.C. 4513.263(G)(1). Carol Bendner was a passenger in a car that was involved in an accident caused solely by the negligence of Lisa Carr.

The evidence of the negligent nature of Carr's actions was so obvious that the trial judge directed a verdict in plaintiffs' favor on this issue. Due to the particular facts of this accident, however, the evidence showed that Carol would not have been injured if she were wearing her seat belt. The jury's determination of the comparative fault in this case allowed Carr, the sole cause of the accident, to escape liability. There is nothing to suggest that this scenario is unusual; in fact, the opposite is true. Kessler testified that the injury initially sustained by the plaintiff is so common that it is referred to as a "dashboard knee injury." Given all of this, we cannot say that R.C. 4513.263(G)(1) does not bear a reasonable relationship to the legislative purpose of the statute as a whole.

The test for determining whether a statute violates equal protection is whether a rational basis exists for the classification in the statute. As explained above, there is a rational basis for the legislature's determination that non-use of a seat belt is not admissible. Also, the class of persons affected is the class of all people involved in automobile accidents. Where the statutory classification does not affect a fundamental interest, and is not based on "suspect" criteria, the classification will be upheld if there exists any conceivable set of facts under which the classification rationally furthers a legitimate legislative objective. *Gates* v. *Brewer, supra,* at 349, 2 OBR at 394, 442 N.E. 2d at 75. In our view, R.C. 4513.263(G) is rationally related to a valid legislative purpose: encouragement of seat-belt use through a fine system, while preserving the right to compensation for injuries caused by negligent drivers. The trial court erred in ruling subsection (G) unconstitutional.

The trial court also held that there

was a common-law duty to wear seat belts, citing *McCartney* v. *Ake* (1984), 22 Ohio Misc. 2d 32, 22 OBR 340, 489 N.E. 2d 1079. While we agree that this case did hold that there was a common-law duty to exercise reasonable care and wear seat belts, this case was decided before R.C. 4513.263(G) went into effect. In fact, there have been very few reported Ohio decisions addressing the question. In *Roberts* v. *Bohn* (1971), 26 Ohio App. 2d 50, 55 O.O. 2d 78, 269 N.E. 2d 878, reversed on other grounds *sub nom. Suchy* v. *Moore* (1972), 29 Ohio St. 2d 99, 58 O.O. 2d 194, 279 N.E. 2d 878, the court held that there was no duty to wear a seat belt, and that failure to wear one was not contributory negligence. In *Bertsch* v. *Spears* (1969), 20 Ohio App. 2d 137, 49 O.O. 2d 164, 252 N.E. 2d 194, the court held that failure to wear a seat belt was not negligence *per se.*

The defendant argues that both of these cases are inapplicable because they were both decided before Ohio's adoption of comparative negligence in 1980, and before the adoption of mandatory seat-belt use in 1986. While it is true that contributory negligence is no longer a complete bar to recovery, we do not believe that the adoption of comparative negligence mandates a different result. The Court of Appeals for Erie County, the court that decided *Bertsch,* has recently addressed the same issue in *Mackey* v. *Buchanan* (Feb. 21, 1986), Erie App. No. E-85-20, unreported. In that case, the court ruled that the evidence of non-use of a seat belt was inadmissible and that the jury should not have been given a comparative negligence instruction based on the plaintiff's failure to wear a seat belt. The court considered the applicability of the comparative negligence statute, and stated that adoption of the statute was not intended to give rise to a defense that did not exist before the statute was adopted, but rather to soften the harsh results of the contributory negligence standard. *Mackey, supra,* at 5.

The defendant contends that *McCartney, supra,* and *Moore* v. *Arrow Truck Lines* (S.D. Ohio 1984), 16 OBR 306, show that Ohio common law was moving towards the adoption of the seat-belt defense. We do not agree, however, that these cases are persuasive. *Moore* relied on dicta in *Sours* v. *General Motors Corp.* (C.A. 6, 1983), 717 F. 2d 1511, to the effect that the Ohio Supreme Court *might* adopt a rule different from *Roberts, supra.* In addition, the *Sours* court indicated that the seat-belt defense is "peculiarly *legislative* in nature." (Emphasis *sic.*) *Id.* at 1520. Given the fact that the legislature has now spoken in a constitutional manner, we are not persuaded by any of the defendant's cases.

The defendant also argues that R.C. 4513.263(G) should not apply because it had not been enacted at the time of the accident, and to apply it to this case would be to give the statute retroactive effect. We agree with plaintiffs that R.C. 4513.263(G) is remedial, not substantive in nature, and that the constitutional bar to retroactive application under Section 28, Article II of the Ohio Constitution does not apply. Section 28, Article II refers to laws affecting substantive rights, not laws providing for rules of practice or procedure. *Kilbreath* v. *Rudy* (1968), 16 Ohio St. 2d 70, 72, 45 O.O. 2d 370, 371, 242 N.E. 2d 658, 660. We are not persuaded that a common-law seat-belt defense existed prior to May 6, 1986, that was stripped away by R.C. 4513.263(G). Hence, subsection (G) does not affect the assessment of the percentages of negligence under the comparative negligence statute. R.C. 4513.263(G) is, in essence, a rule of evidence which codifies what we believe to be the common law of Ohio.

As such, it does not *affect* substantive rights.

The first assignment is sustained. The evidence of Carol Bendner's failure to wear a seat belt should not have been admitted.

The second assignment is also well-taken. There should have been no instruction given as to comparative negligence in this case. The trial court properly instructed the jury that the defendant was the sole cause of the accident; the jury was, however, then given instructions to determine whether plaintiff had committed an act of negligence which directly and proximately caused her own injuries. Given the disposition of the first assignment, it was error for the court to instruct the jury to decide whether Bendner's failure to wear a seat belt constituted contributory negligence. There was no contributory negligence to compare with Carr's negligence. The second assignment is sustained.

The Bendners' third assignment is that the court erred in not affirmatively instructing the jury that the defendant was liable for all damages proximately flowing from the accident, regardless of whether Bendner's subsequent medical treatment may have exacerbated her injuries. This assignment refers to Bendner's RSD, which developed after the accident. There was testimony from which the jury could have concluded that the RSD was caused by the second arthroscopy performed by Dr. Kessler.

Counsel for the Bendners submitted the following proposed jury instruction:

"If you find for the plaintiffs, you are hereby instructed as a matter of law, that defendant is liable to plaintiff Carol Bendner for any additional injury or condition flowing from plaintiff's original injury proximately caused by the August 1, 1983 accident. Therefore, if you find for the plaintiffs, defendant is liable for all injuries and damages which plaintiff Carol Bendner sustained, regardless whether you believe those injuries and damages directly and proximately resulted from one or more medical treatments rendered to the plaintiff after the August 1, 1983 accident."

The trial court refused to give this instruction.

It is well-settled in Ohio that a tortfeasor remains liable for all damages proximately caused by his negligence. Subsequent medical malpractice is not a superseding cause. *Loeser* v. *Humphrey* (1884), 41 Ohio St. 378; *Traveler's Indemnity Co.* v. *Trowbridge* (1975), 41 Ohio St. 2d 11, 70 O.O. 2d 6, 321 N.E. 2d 787. As the court stated in *Trowbridge*: "[T]he negligence of a tortfeasor in causing the original injury is the proximate cause of damages flowing from the subsequent negligent or unskilled treatment thereof by a physician and * * * the original wrongdoer is liable therefor." *Id.* at 13, 70 O.O. 2d at 7, 321 N.E. 2d at 789. See, also, *Jones* v. *Butler* (1942), 72 Ohio App. 335, 27 O.O. 273, 52 N.E. 2d 347. All of these cases were brought to the court's attention, but the court refused to instruct the jury accordingly. Instead, the court instructed the jury:

"When the negligent act, or failure to act, of one party continues, combines with or joins the negligence of another to produce the injury or damage, the negligence of each or both is a cause."

The defendant's counsel argued during closing arguments that the defendant was not chargeable with those injuries sustained after Kessler's surgery. Given the fact that the jury was not given a proper instruction as to subsequent medical treatment, it is obvious that the jury did not consider any of the damages shown to have followed the second surgery.

We must note, however, that the plaintiffs' proposed instruction is too broad. We agree with the statement of law as contained in the first sentence. However, the second sentence should simply indicate to the jury that in its consideration of damages proximately caused by Carr's negligence, it is not to consider the effect of any subsequent medical treatment as relieving the defendant of responsibility for those damages. The third assignment is sustained.

The fourth assignment is that the jury's verdict of $8,050 was against the manifest weight of the evidence. The evidence adduced at trial was that Carol Bendner's medical expenses were $24,816.66; travel expenses to and from Dayton and Columbus where she received treatment were $2,521.50; and lost wages amounted to approximately $8,000. The jury also returned a zero verdict for David Bendner.

We agree that the jury's verdict was against the weight of the evidence. As previously discussed, the jury was not correctly instructed as to the non-effect of Kessler's surgery on the damage question. In view of the evidence presented and the instructions given, the jury apparently ignored any damages sustained after the second arthroscopy. In any event, the erroneous instructions misguided the jury in its consideration of the true extent of the Bendners' recoverable damages. The fourth assignment is sustained.

The final assignment is that the plaintiffs are entitled to a new trial on the issues of damages only. As there has been no cross-appeal of the directed verdict on the issue of the defendant's negligence, the plaintiffs are correct. On remand, the evidence of Carol's failure to wear a seat belt will be inadmissible. Therefore, there will be no need to instruct the jury on comparative negligence as negligence for the accident has been directed.

While we agree with defendant that an award of no damages for loss of consortium is not reversible error, *Barnekow* v. *Crawfis* (App. 1973), 4 O.O. 3d 404, the posture of this case makes it impossible to discern whether the jury considered anything after Kessler's surgery. The jury, on remand, will reconsider the claim for loss of consortium. The fifth assignment is sustained.

The judgment is reversed, and the case is remanded for a new trial on the issue of damages only.

*Judgment accordingly.*

BROGAN and WILSON, JJ., concur.