901 P.2d 192

**D'on MOTT, Executor and Heir to the Estate of Michael Hagen, deceased, and D'on Mott, as Mother and Next Friend of Jonathan Hagen, a minor, Plaintiff–Appellee,**

v.

**SUN COUNTRY GARDEN PRODUCTS, INC., a New Mexico corporation, Defendant–Appellant.**

No. 15548.

Court of Appeals of New Mexico.

May 26, 1995.

Certiorari Denied July 12, 1995.

Jeffrey E. Jones, Miller, Stratvert, Torgerson & Schlenker, P.A., Santa Fe, William H. Sutton, C. Tab Turner, Scott H. Tucker, Friday, Eldredge & Clark, Little Rock, AR, Marcy F. Branham, Phoenix, AZ, for plaintiff-appellee.

Penni Adrian, Robert L. Hlady, Gallagher, Casados & Mann, P.C., Albuquerque, for defendant-appellant.

## OPINION

BLACK, Judge.

This case involves the use of the so-called "seat belt defense" in an automobile accident where the driver died after being thrown from his vehicle. A lawsuit by the decedent's estate resulted in a jury award of $1,780,200, holding the driver 30% liable for his own injuries and Defendant 70% liable. On appeal, Defendant argues that the district court committed error in three areas: (1) excluding evidence that neither the driver nor his passenger were wearing seat belts at the time of the accident; (2) refusing jury instructions tendered by Defendant; and (3) refusing to admit relevant evidence. We affirm.

### FACTS

On the morning of April 15, 1989, Michael Hagen, accompanied by his seven-year-old son, Jonathan, drove from their home to Sun Country Garden Products, Inc. Michael was driving a 1988 Ford Bronco II, to which he had attached his five-by-twelve-foot utility trailer. He ordered and paid for less than two cubic yards of fine black mulch and drove around to the mulch pile to have it loaded into his trailer. A Sun Country employee loaded the mulch using a front-end loader.

With some assistance from Jonathan, Michael covered the load with a tarpaulin. Approximately five miles from Sun Country, the Bronco hit a bump while travelling between forty-five and sixty miles per hour. When the Bronco hit the bump, Jonathan dropped some plastic pipes on the floor and jumped off the seat to retrieve them. From the floor, he saw his father briefly look down at him.

When the trailer hit the bump it began to fishtail. Michael apparently attempted to correct the fishtailing trailer, but the Bronco and trailer swerved onto the unpaved shoulder. The trailer then broke free and came to a stop some distance down the road. The Bronco rolled over at least once. Michael was ejected through the driver's side window, struck his head on the pavement, and died instantly. Jonathan had become lodged under the dashboard when the Bronco rolled, thus escaping serious injury.

Additional facts will be considered as relevant to Defendant's specific arguments.

## I. THE DISTRICT COURT DID NOT ERR IN EXCLUDING EVIDENCE OF FAILURE TO USE SEAT BELTS.

### A. Application of NMSA 1978, Section 66–7–373 (Repl.Pamp.1987), Did Not Violate New Mexico Constitution Article IV, Section 34.

In 1984, this Court held that the fact finder should be allowed to consider the use of available seat belts on the issue of a plaintiff's comparative fault. *Thomas v. Henson*, 102 N.M. 417, 420, 696 P.2d 1010, 1013 (Ct.App.1984), *rev'd in relevant part*, 102 N.M. 326, 695 P.2d 476 (1985). This Court stated that a seat belt defense, employed to reduce a plaintiff's damages by the amount that could have been avoided through the use of a seat belt, was a proper use of apportionment and not an improper return to the doctrine of contributory negligence. *Id.* at 422–23, 696 P.2d at 1015–16.

The New Mexico Supreme Court, on its own motion, entered a writ of certiorari to review our *Thomas* decision. *Thomas v. Henson*, 102 N.M. 326, 695 P.2d 476 (1985). The Supreme Court concluded its four-paragraph opinion by saying:

[W]e believe that the creation of a "seat belt defense" is a matter for the Legislature, not for the judiciary. We therefore affirm that part of the Court of Appeals' opinion that upholds the award in favor of plaintiffs and reverse that part that creates a "seat belt defense."

*Id.* at 327, 695 P.2d at 477.

In response to the Supreme Court's holding that the seat belt defense was "a matter

for the Legislature," the 1985 New Mexico Legislature took up the issue and specifically addressed the admissibility of the failure to wear seat belts in tort actions. One bill proposed in the Senate expressly provided that such evidence "shall be admissible concerning mitigation of damages, apportionment of damages or comparative fault." S.111, 37th Legis., 1st Sess. § 4(B) (1985). The 1985 Legislature did not pass that bill, but instead enacted the Safety Belt Use Act, 1985 N.M. Laws, ch. 131 (codified at NMSA 1978, Sections 66–7–370 to –373 (Repl. Pamp.1987)). Although the Safety Belt Use Act required front seat occupants of passenger cars to wear seat belts and provided fines for the failure to do so, *id.,* Subsection B provided that the failure to be secured by a seat belt or child restraint device "shall not in any instance constitute fault or negligence and shall not limit or apportion damages." Section 66–7–373(B).

In 1991, the Legislature amended Section 66–7–373 by deleting Subsection B. 1991 N.M. Laws, ch. 192, § 8. Two years later, the Legislature again amended Section 66–7–373, 1993 N.M. Laws, ch. 349, and again reinserted the provision that "[f]ailure to be secured by a child passenger restraint device or by a safety belt as required by the Safety Belt Use Act ... shall not in any instance constitute fault or negligence and shall not limit or apportion damages." *Id.* at § 1(A) (codified at NMSA 1978, § 66–7–373(A) (Repl.Pamp.1994)).

Based on this legislative history, Defendant argues that the seat belt defense was not prohibited by statute when Plaintiff brought this action on April 8, 1992. Defendant contends that the district court therefore violated Article IV, Section 34 of the New Mexico Constitution by prohibiting the introduction of seat belt evidence in this case. Plaintiff responds that the seat belt defense is substantive and "[i]t is axiomatic that substantive law (as opposed to a procedural or remedial law) is the law applicable at the time of injury."

Article IV, Section 34 of the New Mexico Constitution provides: "No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." *Id.* In order to sustain a challenge based on Article IV, Section 34, then, it is Defendant's burden to prove that application of Section 66–7–373 would affect its preexisting rights or remedies. *Health & Social Servs. Dep't v. Garcia,* 88 N.M. 640, 642, 545 P.2d 1018, 1020 (1976) (party attacking legislation must show the invalidity thereof).

In *Thomas,* this Court implicitly recognized that the existing New Mexico common law did not recognize a seat belt defense. *Thomas,* 102 N.M. at 424, 696 P.2d at 1017. Rather, our opinion attempted to extend the common law to encompass that defense:

In an area of the law peculiarly appropriate for judicial development, we have no hesitation in extending a common law duty when deemed needed. Tort law is such an area. Therefore, we recognize, as part of the continuing duty to exercise reasonable care for his or her own safety, an occupant of an automobile has a duty to fasten an available seat belt or similar safety restraint device unless the circumstances dictate otherwise....

Further, we believe the adoption of the seat belt defense as part of the apportionment of damages fits within the developing law of comparative fault as contemplated in *Scott v. Rizzo*[, 96 N.M. 682, 634 P.2d 1234 (1981) ].

*Thomas,* 102 N.M. at 424, 696 P.2d at 1017.

As noted above, however, the Supreme Court promptly rejected this Court's attempt to expand the common law to embrace the seat belt defense and held that the admission of seat belt evidence would have to await legislative authorization. *Thomas,* 102 N.M. at 327, 695 P.2d at 477. No such authorization has been forthcoming from the New Mexico Legislature. Thus, Defendant misses the mark in arguing that the 1991 amendment of Section 66–7–373 to delete the prohibition against evidence of seat belt non-use somehow restored a preexisting common law seat belt defense. Because Defendant did not possess the right to limit Plaintiff's recovery for seat belt non-use at common law, Section 66–7–373 does not limit Defendant's rights or remedies.

In *Armijo v. Atchison, Topeka & Santa Fe Ry.*, 754 F.Supp. 1526 (D.N.M.1990), *rev'd in part on other grounds*, 19 F.3d 547 (10th Cir.), *and rev'd in part on other grounds*, 27 F.3d 481 (10th Cir.1994), Judge Campos specifically rejected an argument based on the premise that Section 66–7–373 somehow altered a defendant's common law right to introduce seat belt evidence. *Id.* at 1535. The plaintiff's decedent in *Armijo* died in a collision between the car he was driving and the defendant's train. *Id.* at 1528. The plaintiff moved to exclude any evidence of "the alleged failure by the Plaintiff's Decedent to use a seat belt, and the consequences flowing therefrom." *Id.* at 1534. In response, the defendant argued, in part, that Section 66–7–373 denied the defendant equal protection "by making [it] pay for damages caused entirely by the plaintiff's failure to exercise due care for his safety by failing to use an available seat belt." *Armijo*, 754 F.Supp. at 1535. Judge Campos rejected this argument, using language that is equally applicable to Defendant's argument in the present case:

> The problem with this argument is that a common law duty to wear a seat belt did not exist prior to the enactment of this statute and with the enactment of this statute the legislature specifically declined to make failure to wear a seat belt the basis for negligence or fault. Therefore, the statute does not affect the substantive rights of defendants or plaintiffs. In New Mexico, there never was a "seat belt defense" and there still is not a "seat belt defense."

*Id.* Because Defendant had no right or remedy with regard to seat belts prior to the adoption of Section 66–7–373, that section does not unconstitutionally interfere with Defendant's rights or remedies.

B. *Section 66–7–373(B) Does Not Violate the Separation of Powers Doctrine.*

■ Defendant argues that New Mexico courts "have often set aside legislation that encroaches upon the judicial power." Initially, we respond to this argument by simply noting that the New Mexico Supreme Court undercut Defendant's position in its *Thomas* opinion. In *Thomas*, the Supreme Court

specifically held that "the creation of a 'seat belt defense' is a matter for the Legislature." *Thomas*, 102 N.M. at 327, 695 P.2d at 477. Since the Supreme Court's *Thomas* decision is both relatively recent and definitive on this issue, we are not inclined to question its validity. *See State v. Wilson*, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994) (this Court is bound by direct Supreme Court precedent).

The separation of powers argument advanced by the present Defendant was also rejected by Judge Campos in *Armijo*, 754 F.Supp. at 1534–35. In *Armijo*, the defendant argued that Section 66–7–373 did not prohibit a jury from apportioning fault and damages as a consequence of the plaintiff's failure to use a seat belt, but that even if it did, the statute violated the separation of powers doctrine. *Id.* at 1534. Judge Campos rejected this interpretation and elaborated on the proper roles of the legislature and judiciary on this issue:

> With regard to Defendant's separation of powers argument, the Court finds that § 66–7–373B. is not, as the Defendant contends, a legislative enactment of a rule of evidence, but rather is the enactment of a substantive state policy. It is true as Defendant states that the New Mexico Constitution reposes the inherent power to regulate all pleading, practice and procedure affecting the judicial branch exclusively in the Supreme Court. *Miller & Associates, Ltd. v. Rainwater*, 102 N.M. 170, 171–172, 692 P.2d 1319[, 1320–21] (1985). However, it is also true that the Courts should not invalidate substantive policy choices made by the legislature under the constitutional exercise of its police powers. *Southwest Community Health Services v. Smith*, 107 N.M. 196, 199, 755 P.2d 40[, 43] (1988). The Court finds it is clearly within the power of the legislature to determine whether or not to impose as a matter of State policy an obligation on its citizens to wear a seat belt and to establish the sanctions for non-conformity with that obligation.

*Armijo*, 754 F.Supp. at 1534–35.

While Defendant is correct in stating that, as a federal court decision, *Armijo* "is with-

out binding authority in state courts," we find the reasoning of Judge Campos, himself a former state judge, persuasive. His decision is also consistent with our Supreme Court's opinion in *Thomas*. We therefore hold Section 66–7–373 to be within the legitimate ambit of legislative authority.

### C. *Limiting Defendant's Use of Seat Belt Evidence Does Not Violate Due Process.*

Defendant next contends that "New Mexico's prohibition of a seat belt defense arbitrarily and unreasonably interferes with the adjudication of rights in a comparative negligence system. Thus, the prohibition denies substantive due process." We disagree.

■ ▪ Legislative acts are presumed to be valid and cannot be declared invalid "unless the court is clearly satisfied that the legislature went outside the constitution in enacting them." *Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988). It is the duty of an appellate court to uphold such legislation unless the court is satisfied beyond all reasonable doubt that the statute is unconstitutional. *City of Farmington v. Fawcett*, 114 N.M. 537, 540, 843 P.2d 839, 842 (Ct.App.), *cert. quashed*, 114 N.M. 532, 843 P.2d 375 (1992): It is therefore "not the province of this Court to invalidate substantive policy choices made by the legislature." *Eturriaga v. Valdez*, 109 N.M. 205, 209, 784 P.2d 24, 28 (1989).

■ To withstand substantive due process scrutiny, a statute need only bear some rational relationship to a legitimate legislative goal or purpose. *Garcia v. Village of Tijeras*, 108 N.M. 116,. 119, 767 P.2d 355, 358 (Ct.App.), *cert. denied*, 107 N.M. 785, 765 P.2d 758 (1988). Section 66–7–373(B) has a reasonable relation to a proper legislative purpose. Judge Campos recognized this relationship in *Armijo*, 754 F.Supp. at 1534–35. Other jurisdictions have also specifically rejected due process challenges to statutes similar to Section 66–7–373(B). *See, e.g, C.W. Matthews Contracting Co. v. Gover*, 263 Ga. 108, 428 S.E.2d 796, 798–99 (1993); *Thompson v. Fitzpatrick*, 199 Mich.App. 5, 501 N.W.2d 172, 173 (Mich.Ct.App.1991) (per curiam), *appeal denied*, 442 Mich. 937, 503 N.W.2d 911 (1993).

Like our Legislature, the Ohio Legislature adopted a statute that made the use of seat belts mandatory and established fines as punishment for their non-use. Ohio Rev. Code Ann. § 4513.263 (Baldwin 1994). The Ohio statute also provides that the failure to use a seat belt "shall not be considered or used as evidence of negligence or contributory negligence [and] shall not diminish recovery for damages in any civil action." Ohio Rev.Code Ann. § 4513.263(F)(1). In *Bendner v. Carr*, 40 Ohio App.3d 149, 532 N.E.2d 178 (1987), an automobile passenger, who was not wearing a seat belt, sued for injuries suffered in an accident. *Id.*, 532 N.E.2d at 179–80. Defense counsel challenged the Ohio statute as a violation of due process. *Id.* at 181. The trial court ruled that the statute was unconstitutional and permitted the introduction of seat belt evidence. *Id.* at 180. The jury returned a verdict in favor of the defendant. *Id.* The Ohio Court of Appeals reversed the trial court's decision. *Id.* at 184. The appellate court first recognized that the measuring rod for due process is "whether the statute has a reasonable relationship to a proper legislative purpose, without being arbitrary or discriminatory." *Id.* at 181. The appellate court then applied this standard to the seat belt defense statute, saying:

> The legislature undoubtedly concluded that seat-belt use was desirable, and that although the enactment of a law providing for small fines would encourage people to "buckle up," an injured plaintiff should nevertheless not be denied recovery when involved in a collision with a negligent tortfeasor. This case is a perfect example of the harsh results possible under [the defendant's] view of R.C. 4513.263(G)(1) [substantively identical to current Ohio Rev.Code Ann. Section 4513.263(F)(1) ].... Given all of [the circumstances in this case], we cannot say that R.C. 4513.263(G)(1) does not bear a reasonable relationship to the legislative purpose of the statute as a whole.

*Bendner*, 532 N.E.2d at 181–82. Nor can we say that our Section 66–7–373(B) "does not bear a reasonable relationship to the legisla-

tive purpose of the statute as a whole." *Bendner*, 532 N.E.2d at 182.

**D.** *Section 66–7–373 Prohibits Consideration of the Use of Seat Belts for Causation.*

■ Defendant's final challenge to the district court's refusal to admit evidence that Michael was not wearing a seat belt turns on the purpose for which such evidence was offered. Defendant argues that, even if Section 66–7–373 may legitimately prohibit the use of the seat belt evidence to prove fault or apportion damage, "[t]here is no prohibition on the introduction of such evidence to prove causation."

Whatever appeal this contention might have as an abstract proposition, at least two countervailing factors argue against it. Initially, we note that the Supreme Court refused our implicit invitation to adopt this theory in *Thomas*. In this Court's *Thomas* opinion, we recognized the critical importance of proof that the failure to wear seat belts actually caused the injury. *Thomas*, 102 N.M. at 426, 696 P.2d at 1019. We expressly said, "Our holding applies when a plaintiff has failed to exercise due care for his own safety by failing to use an available seat belt, and injury is caused by that failure." *Id.* at 425, 696 P.2d at 1018. That opinion was, of course, reversed. *Thomas*, 102 N.M. at 327, 695 P.2d at 477.

Nor does the language used by the New Mexico Legislature in Section 66–7–373 indicate any intent to allow the introduction of evidence of failure to use seat belts for any purpose in a negligence action. Defendant does not argue that the non-use of seat belts actually caused the Bronco to hit the bump and begin to fishtail. Rather, Defendant's argument is that Michael would have suffered less severe injuries had he used his seat belt. Indeed, Defendant contends that its "expert established, and intended to testify, that Plaintiff's decedent in the captioned case was ejected from his car and died because he was not restrained by a seat belt." Section 66–7–373(B) specifically provides, however, that evidence of the failure to use seat belts "shall not limit or apportion damages." *Id.* It is impossible to conceive how the district court could permit the introduction of evidence that the non-use of seat belts

"caused" increased damages, but then not allow the jury to "limit or apportion damages." The district court therefore did not err in excluding such evidence.

## II. THE DISTRICT COURT PROPERLY REFUSED DEFENDANT'S PROFFERED JURY INSTRUCTIONS.

**A.** *The District Court Did Not Err in Excluding Defendant's Strict Liability Instruction.*

■ Ford Motor Company, which was originally a party to this lawsuit, settled with Plaintiff. At trial, however, Defendant offered the opinion testimony of expert witnesses concerning the roll-over hazard inherent in the design and construction of the Ford Bronco II Michael was driving at the time of the accident. Defendant tendered a requested jury instruction "that would have informed the jury that Ford Motor Co. was strictly liable for any injuries proximately caused by defects in the Bronco II." Defendant argues that the district court erred in refusing this instruction and not instructing the jury on its strict liability theory.

"An instruction on a theory is properly given only if the theory is plead [sic] or is tried by express or implied consent of the parties." *Davila v. Bodelson*, 103 N.M. 243, 251, 704 P.2d 1119, 1127 (Ct.App.), *cert. denied*, 103 N.M. 177, 704 P.2d 431 (1985). Defendant failed to plead strict liability in its answer and affirmative defenses. Although some evidence was presented criticizing the Bronco II, there was no direct evidence submitted that the Bronco II was defective, defectively designed, or unreasonably dangerous. The district court therefore instructed the jury at length on Defendant's negligence theory against Ford Motor Company but did not give the tendered instructions on strict liability. Because the theory of strict liability was neither pleaded nor tried by express or implied consent, the failure to instruct the jury on strict liability was not error.

**B.** *The District Court Properly Refused Defendant's Requested Jury Instruction Regarding the Distribution of the Mulch.*

Defendant delivered the mulch to Michael by pouring the mulch into his trailer from a

front-end loader. The operator of the loader testified at trial that when a load is first placed in a trailer, it creates a mound higher in the center that tapers off at the edges.

Defendant also elicited testimony that Michael and Jonathan covered the load with a tarpaulin. Evidence was also presented regarding the condition of the load before and after the accident. Defendant contends that "[t]he clear implication of this evidence is that Decedent arranged the load of mulch to his own satisfaction, and created the hazard of load instability." Defendant therefore argues the district court erred in not giving the jury Defendant's tendered instruction that Michael "knew or should have known the load was improperly placed on his trailer." The tendered instruction read as follows:

> 1. If the mulch was improperly loaded on Michael Hagen's trailer, Michael Hagen observed the loading of the mulch, arranged or adjusted the load, covered it and removed it from Sun Country without adjusting the load or making complaint, though he knew or should have known the load was improperly placed on his trailer.

As can be seen by reading the entire requested instruction, the wording is nonsensical. The instruction states that Michael "*arranged or adjusted the load,* covered it and removed it from Sun Country *without adjusting the load* or making complaint." (Emphasis added). "[A] requested instruction that is erroneously or inaccurately drafted need not be given by the trial court." *Mireles v. Broderick,* 117 N.M. 445, 450, 872 P.2d 863, 868 (1994). Here, the district court struck the initial "arranged or adjusted" phrase, and gave the standard Uniform Jury Instruction on circumstantial evidence, SCRA 1986, 13–308 (Repl.1991). We find no error in the instruction given.

### C. *The District Court Did Not Err in Refusing the Negligence Per Se Instruction.*

Defendant's final challenge to the jury instructions deals with the issue of negligence per se. Defendant maintains that it introduced evidence that Michael was towing a twelve-foot trailer with a 3,000–pound load without trailer brakes or load levelers, and

that this evidence was sufficient to prove a violation of NMSA 1978, Section 66–3–801 (Repl.Pamp.1989). That section prohibits any person from operating a vehicle on the highway unless the equipment is in good working order and safe mechanical condition. *Id.* The district court properly refused to submit Defendant's requested instruction because there was no evidence that either the Bronco II or the trailer was not in good working order or was not mechanically safe. *See Garcia v. Barber's Super Mkts., Inc.,* 81 N.M. 92, 96, 463 P.2d 516, 520 (Ct.App.1969) (an instruction may not be given without substantial evidence to support it).

Defendant further argues there was evidence that Michael looked at Jonathan just before the accident and was therefore not giving his full attention to the operation of the vehicle in violation of NMSA 1978, Section 66–8–114 (Repl.Pamp.1994). Defendant bases this argument on Jonathan's testimony that, when the Bronco hit the bump, his father looked down at him "for a second and then looked back up." It seems unlikely that the legislature contemplated that glancing away from the road for a period of "a second" would constitute a violation of the statute. In any event, the district court instructed the jury that it is the duty of the driver of every motor vehicle to keep a proper lookout at all times and to maintain proper control of his vehicle. Thus, the instruction given, SCRA 1986, 13–1202 (Repl.1991), adequately covered Defendant's concern. "Denial of a requested instruction is not error where the instructions given adequately cover the issue." *Flanary v. Transport Trucking Stop,* 78 N.M. 797, 801, 438 P.2d 637, 641 (Ct.App. 1968).

### III. *THE DISTRICT COURT'S EVIDENTIARY RULINGS WERE WITHIN ITS PROPER DISCRETION.*

The admission of evidence rests within the sound discretion of the district court. *State v. Richerson,* 87 N.M. 437, 441–42, 535 P.2d 644, 648–49 (Ct.App.), *cert. denied,* 87 N.M. 450, 535 P.2d 657 (1975). An abuse of discretion will be found only when the district court's decision is clearly untenable or contrary to logic and reason. *City of Santa*

*Fe v. Komis,* 114 N.M. 659, 663, 845 P.2d 753, 757 (1992).

### A. The District Court Properly Excluded Expert Opinion that Driver Inattention Caused the Accident.

■ Defendant attempted to introduce testimony from an expert witness, Ronald Henson, that the previously described period of eye contact between Michael and his son after the Bronco hit the bump caused the accident. The district court did not abuse its discretion in excluding this testimony.

■ The applicable evidentiary rule, SCRA 1986, 11–702 (Repl.1994), provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion." *Id.* The corollary to this rule is that if the fact in issue is within the ken of the average lay juror, expert opinion testimony is not necessary. *See United States v. Weiner,* 3 F.3d 17, 21–22 (1st Cir.1993) (it is error to allow an expert to testify on a routine inference that jurors could draw for themselves); *cf. State v. Hall,* 103 N.M. 207, 210, 704 P.2d 461, 464 (Ct.App.1985) (expert testimony admissible in cases where "average juror would have no basis for evaluating the evidence without the assistance of an expert").

The determinative question in considering whether expert testimony will assist the fact finder is: "On *this subject* can a jury receive from *this person* appreciable help?" 7 John Henry Wigmore, *Wigmore on Evidence* § 1923, at 29 (Chadbourn rev. 1978). Our Supreme Court has accepted Professor Wigmore's question as "the relevant inquiry." *State v. Alberico,* 116 N.M. 156, 166, 861 P.2d 192, 202 (1993). We cannot say the district court abused its discretion in determining that Henson's testimony would not offer the jury "appreciable help" on whether the "second" of eye contact between Michael and Jonathan after the Bronco hit the bump caused the accident.

### B. The District Court Properly Refused to Admit Testimony Comparing the Owner's Manuals for the Ford Bronco and a General Motors' Vehicle.

■ Defendant argued that Ford Motor Company was liable for failing to warn Michael of the roll-over potential of the Ford Bronco II. In support of this theory, Defendant sought to elicit testimony from its expert that the owner's manual for the Chevrolet S–10 Blazer was superior to the Bronco II owner's manual.

In sustaining Plaintiff's objection to such testimony, the district court invited defense counsel to lay a proper foundation, but defense counsel made no attempt to do so. Rather, defense counsel simply asked for the witness' opinion regarding the warnings in the Bronco II manual, without reference to the Blazer manual. Furthermore, defense counsel made no attempt to show how the Bronco II and the Blazer were comparable vehicles. In short, because Defendant failed to lay a proper foundation for a comparison between the two vehicles and also failed to make a proffer of the excluded testimony, Defendant cannot now claim error on appeal. *Wood v. Citizens Standard Life Ins. Co.,* 82 N.M. 271, 272, 480 P.2d 161, 162 (1971) (proper tender of proof is essential to the preservation of error when a party alleges evidence has been improperly excluded at trial).

### C. The District Court Did Not Err in Refusing to Allow the Jury to View the Trailer.

■ Defendant arranged to park the trailer at the courthouse and asked the district court to allow the jury to view the trailer. According to Defendant, the purpose of this request was to give the jury a better understanding of the trailer's configuration and how loads could be distributed on the trailer. Defendant argues that the district court "erred in refusing to permit the jury to view this clearly relevant demonstrative evidence, because all relevant evidence is admissible." *See* SCRA 1986, 11–402 (Repl.1994).

We hold that the district court was properly within its discretion in refusing to allow a jury view of the trailer for several reasons. First, Defendant did not list the trailer on its

exhibit list, as required by the district court's pretrial and scheduling orders. *See* SCRA 1986, 1–016 (Repl.1992); *State ex rel. State Highway Dep't v. Branchau,* 90 N.M. 496, 497, 565 P.2d 1013, 1014 (1977) (pretrial order controls case). Second, several photographs of the trailer had already been admitted into evidence. *See State v. Maddox,* 99 N.M. 490, 492, 660 P.2d 132, 134 (Ct.App. 1983) (nothing jury could have observed at accident scene would have materially affected other evidence already admitted). Third, and most importantly, Defendant was unable to prove that the trailer was in the same or substantially the same condition at the time of trial as it had been five years earlier when the accident occurred. *See State v. Chavez,* 84 N.M. 760, 761, 508 P.2d 30, 31 (Ct.App. 1973).

*CONCLUSION*

Having found no reversible error, we affirm.

IT IS SO ORDERED.

BOSSON and BUSTAMANTE, JJ., concur.