Stevie SMITH, et al., Plaintiffs,

v.

**NORFOLK AND WESTERN RAILWAY CO., Defendant.**

**No. S90–494 (RLM).**

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 8, 1991.

Ken Allen, Dale Allen and Leon Sarkisian, Merrillville, Ind., for plaintiffs.

John C. Duffey and Russell H. Hart, Lafayette, Ind., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

On October 6, 1988, Judy Smith died as a result of a tragic automobile/train collision on U.S. 35 (Heaton Street) in Knox, Indiana. At 5:30 a.m., Ms. Smith's southbound automobile was crossing single main line tracks and was struck by a westbound train operated by Norfolk and Western Railway Company ("Norfolk"). Ms. Smith's husband and children brought this wrongful death action, alleging that Norfolk negligently failed to provide adequate warning devices and negligently operated its train.

Norfolk moves for summary judgment, contending that the plaintiffs' claims are preempted by federal law, that there is no evidence of negligence on Norfolk's part, that Ms. Smith's conduct was the sole proximate cause of the collision, and that Ms. Smith's comparative negligence constituted more than fifty per cent of the cause of the accident, barring the plaintiffs from recovery.

### Standard of Review for Summary Judgment

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America*, 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation*, — U.S. —, 110

S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sims v. Mulcahy,* 902 F.2d 524, 540 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If he fails to do so, summary judgment is proper. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990); *Tatalovich v. City of Superior,* 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.,* 915 F.2d 316, 320 (7th Cir.1990); *Hines v. British Steel Corp.,* 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 660 (7th Cir.1991).

■ The parties cannot rest on mere allegations in the pleadings, *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991); *McCarthy v. Kemper Life Ins. Companies,* 924 F.2d 683, 687 (7th Cir.1991), or upon conclusory allegations in affidavits. *Mestayer v. Wisconsin Physicians Service Ins. Corp.,* 905 F.2d 1077, 1079 (7th Cir.1990). The court must construe the facts as favorably to the non-moving party as the record will permit, *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991); *Soldal v. County of Cook,* 923 F.2d 1241, 1245 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Illinois Bell Telephone Co. v. Haines and Co., Inc.,* 905 F.2d 1081, 1087 (7th Cir.1990), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989).

The court will address the defendant's motion with the above standards in mind.

### Federal Preemption
#### 1. Warning Devices

At the time of the accident, the Heaton Street crossing was equipped with a warning sign and stenciled highway markings that indicated the motorist's approach to the crossing. Crossbucks (signs with X-shaped warnings) also were attached to multiple sets of train-activated flashers (warning lights) at the crossing. Exhibit J to the motion contains photographs taken at 10:30 a.m. on the day of the accident, indicating that these warning devices were visible from thirty, fifty, and two hundred feet north of the crossing.

The Heaton Street warning devices were selected and installed at the direction of the Indiana Department of Transportation ("IDOT"), formerly Indiana Department of Highways ("IDOH"). Following IDOH's determination of the devices necessary to upgrade the Heaton Street crossing, on October 8, 1985 the United States Department of Transportation, Federal Highway Administration, approved the upgrading project proposed by IDOH. On February 26, 1988, the IDOH inspected the crossing and determined that, with minor deviations not relevant to this case, the work contemplated to upgrade the crossing had been completed, and that the warning devices at the crossing conformed to the "project work". The IDOH (or IDOT) did not take any action to require warning devices other than those that were present at the time of the accident.

Norfolk argues that the Federal Railroad Safety Act ("FRSA"), 45 U.S.C. § 421 *et seq.,* preempts the plaintiffs' claim that Norfolk failed to provide additional warning devices, including gates, at the Heaton Street crossing. To determine whether Norfolk is correct, the court must look to the intent of Congress in passing the FRSA. *English v. General Electric Co.,* —— U.S. ——, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, state law may be preempted in three circumstances:

First, Congress can define explicitly the extent to which its enactments preempt state law....

Second, in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." ... Although this Court has not hesitated to draw an inference of field preemption where it is supported by the federal statutory and regulatory schemes, it has emphasized: "[W]here ... the field which Congress is said to have preempted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be " 'clear and manifest.' " ...

Finally, state law is preempted to the extent that it actually conflicts with federal law. Thus, the Court has found preemption where it is impossible for a private party to comply with both state and federal requirements.... or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*English v. General Electric,* 110 S.Ct. at 2275.

■ Norfolk claims that the FRSA expressly preempts state law covering the same subject matter as that addressed in the FRSA and the regulations promulgated by the Secretary of Transportation. The FRSA's purpose is "to promote safety in all areas of railroad operations and to reduce railroad-related accidents...." 45 U.S.C. § 421. The FRSA requires the Secretary of Transportation to study and report to Congress on the problem of safety at railroad crossings, and, under the Secretary's authority under the FRSA and pursuant to the Secretary's authority over highway and motor vehicle safety, to "undertake a coordinated effort toward the objective of developing and implementing solutions to the grade crossing problem...." 45 U.S.C. § 433.

Norfolk contends that Congress expressly preempted state law relating to warning devices at railroad crossings in 45 U.S.C. § 434, which reads:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the same subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

Thus, a state law concerning railway safety remains in effect until federal law covering the same subject matter is adopted, and may remain in effect even after federal law covering the same subject matter is adopted if the state law: (1) is necessary to reduce a local safety hazard; (2) is not incompatible with federal law; and (3) does not create an undue burden on interstate commerce.

■ Several recent cases discuss the extent to which the FRSA affects a railroad company's liability for negligence in actions arising out of accidents at railroad crossings. In *Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149 (9th Cir.1983), Judge (now Justice) Kennedy wrote that the FRSA preempts only those state laws where the government has acted with respect to the same "subject matter", and that unlike the Federal Boiler Inspection Act which regulates locomotive equipment,

the FRSA does not occupy the field of warning devices at railroad crossings. 720 F.2d at 1153.

In *Marshall,* as in this case, the plaintiff contended that a crossbuck was inadequate for the crossing at which the plaintiff's decedent was killed, and that an automatic gate with flashing lights should have been installed. The court noted that the Secretary of Transportation had promulgated regulations adopting the Manual on Uniform Traffic Control Devices on Streets and Highways ("MUTCD"), 23 C.F.R. § 655.601. The manual provides that local agencies with jurisdiction over grade crossings would select safety devices at those crossings. Thus, the court noted that the Secretary of Transportation had delegated to local agencies the authority to regulate crossings. 720 F.2d at 1154. However, in *Marshall,*

> The locality in charge of the crossing in question ha[d] made no determination under the manual regarding the type of warning device to be installed at the crossing. Until a federal decision is reached through the local agency on the adequacy of the warning devices at the crossing, the railroad's duty under applicable state law to maintain a "good and safe" crossing, Mont.Code Ann. § 69–14–602 (1981), is not preempted.

720 F.2d at 1154.

The local agency with jurisdiction over the Heaton Street crossing, IDOH, made a determination as to the safety devices necessary at the crossing. In February 1988, the agency determined that the safety devices at the crossing were those considered necessary by the IDOH to upgrade the crossing. Therefore, a federal decision had been reached on the adequacy of the warning devices at the crossing. Accordingly, 45 U.S.C. § 434 and the reasoning of *Marshall* indicate that federal law covering the same subject matter as the plaintiffs' negligence claim has been adopted, and a state standard may only remain in effect if the three requirements of § 434 are met.

In *Karl v. Burlington Northern Railroad Co.,* 880 F.2d 68 (8th Cir.1989), the Eighth Circuit determined that the FRSA

did not preempt the plaintiff's negligence claim based on inadequacy of warning devices at the crossing. Citing *Marshall,* the court found that Congress did not intend to occupy the field of railroad safety. The court also found that there was no actual conflict between federal and state law, because the plaintiff was not forced to choose between federal and state law. 880 F.2d at 76.

In *Armijo v. Atchison, Topeka & Santa Fe Railway Co.,* 754 F.Supp. 1526 (D.N.M.1990), the district court found *Karl* unpersuasive because it focused generally on how an actual conflict between state and federal law may preempt the state law, and on how federal law may so pervasively control a field as to preempt state law. However, the *Armijo* court noted, *Karl* did not discuss the preemption provision in 45 U.S.C. § 434:

> [T]he *Karl* decision ignores the first circumstance (as discussed by the Supreme Court in *English [v. General Electric Co.,* 110 S.Ct. 2270]) where state law is preempted, namely, when Congress defines explicitly the extent to which its enactment preempts state law.... Congress explicitly defined the extent to which its enactment would preempt state law in § 205 of the FRSA [45 U.S.C. § 434]. In light of the express provision in § 434, there is no need to determine whether state law in this case actually conflicts with the federal law or whether state law is preempted because it is in a field that Congress intended to occupy exclusively. The Court notes, however, that state law placing the duty to determine the need for and selection of warning devices at railroad-highway crossings on the railroad is in direct conflict with the MUTCD which places this duty on the public agency with jurisdictional authority.

*Armijo,* 754 F.Supp. at 1532 n. 4.

In addition to *Marshall* and the *Armijo* court's criticism of *Karl,* Norfolk cites *Easterwood v. CSX Transportation, Inc.,* 742 F.Supp. 676 (N.D.Ga.1990), in which the district court determined that federal law preempted the claim that the railroad

was negligent in not providing gate arms. In *Easterwood*, the Georgia Department of Transportation had shifted funds from a project that would have provided gate arms to the site of the accident. The district court found that the shifting of funds constituted a "federal decision" not to install gate arms. 742 F.Supp. at 678–79. However, the Eleventh Circuit reversed this portion of the district court's opinion and held that the policymaker's failure to act due to financial constraints and logistical problems is insufficient to constitute preemption of a negligence claim. *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548, 1555–56 (11th Cir.1991). The court found that "there is a qualitative difference between a failure of a policymaker to act and a case where the policymaker evaluates a situation and then decides not to act 'because [he or she has] determined it is appropriate to do nothing.'" *Easterwood*, 933 F.2d at 1555–56 (quoting *Missouri Pacific Railroad Co. v. Railroad Commission of Texas*, 833 F.2d 570, 576 (5th Cir.1987)).

Here, the policymaker, IDOH, evaluated the situation and determined the appropriate warning devices for the Heaton Street crossing. Therefore, this portion of *Easterwood* does not undermine Norfolk's preemption argument.

In *Hatfield v. Burlington Northern Railroad Co.*, 757 F.Supp. 1198 (D.Kan. 1991), the district court classified the cases addressing the preemptive effect of 45 U.S.C. § 434. *Armijo v. The Atchison, Topeka and Santa Fe Railway Co.*, 754 F.Supp. 1526, was a strict preemption case, finding that state law was preempted once the Secretary of Transportation adopted the MUTCD. The *Hatfield* court determined that following this strict preemption standard would be contrary to the intent of § 434 because it would allow for federal preemption of state standards during a gap between adoption of federal standards and the states' actual implementation of federal standards. "Such a rule, instead of promoting railroad safety at crossings, as the FRSA was intended to do, would actually foster retarded improvement of warning devices at such crossings. That is, the

railroad would have little or no incentive to make necessary improvements at crossings which were known to be unreasonably dangerous." 757 F.Supp. at 1206. Therefore, the *Hatfield* court declined to follow the strict preemption approach.

The next classification in *Hatfield* was the "no preemption" holding of *Karl v. Burlington Northern Railroad Co.*, 880 F.2d 68. The *Hatfield* court declined to follow this approach because it addressed neither the explicit preemption language in § 434 nor the legislative history indicating the congressional intent to provide uniform standards of railroad safety. Further,

> *Karl* did not recognize the first example of preemption used by the Supreme Court in *English*, —— U.S. at ——, 110 S.Ct. at 2275, 110 L.Ed.2d at 74 (where Congress explicitly defines the extent to which it preempts state law ... ). Since this court has already found that type of preemption applies to this case, the reasoning used in *Karl* is not persuasive.

*Hatfield*, 757 F.Supp. at 1206.

The third category of preemption cases the *Hatfield* court identified is the contingent preemption category, the approach used in *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149. The *Hatfield* court stated that the contingent preemption approach:

> ... recognizes the preemptive effect of 45 U.S.C. § 434 but holds the extent of that preemption is limited, and, in that case, has not yet occurred. More specifically, Justice Kennedy found that under the regulatory scheme of the Secretary, preemption of a state-imposed duty on the railroad to provide adequate warnings at railroad crossings was not preempted until the responsible state agency made a determination regarding the type of warning device to be installed. This rule makes the most sense, given the present regulatory scheme and other practical considerations.
>
> \* \* \* \* \* \*
>
> Moreover, this rule furthers the FRSA policy of promoting railroad crossing safety. That is, since the railroad is still

responsible for unreasonably dangerous crossings during the gap period, the railroad itself is encouraged to improve the warning device in use at such a crossing. *Hatfield*, 757 F.Supp. at 1207.

The reasoning of *Hatfield* is persuasive, and this court agrees that contingent preemption is the soundest approach to determining whether 45 U.S.C. § 434 preempts a negligence claim.

■ In this case, because the Secretary of Transportation has acted through the state agency with jurisdiction over the Heaton Street crossing, state law is preempted as to railroad safety, the subject matter covered by § 434. Therefore, if state law is to remain in effect, it must address an essentially local safety hazard, and must neither conflict with federal law, nor unduly burden interstate commerce. 45 U.S.C. § 434.

The plaintiffs argue that even if the FRSA preempts state law, their claim is not barred because the essentially local safety hazard posed by the Heaton Street crossing permits state regulation under § 434. They argue that the crossing was uniquely hazardous because the warning flashers previously had given frequent false warnings by flashing when no train was present. This, the plaintiffs contend, tended to make motorists less cautious when they approached the crossing: motorists would assume that the flashers were malfunctioning and that no train was approaching the intersection. In support of this contention, the plaintiffs submit the affidavit and supplemental affidavit of Sue Spicer[1], stating that on several occasions prior to the accident she witnessed flashers operating at the crossing when no trains were present. The plaintiffs also contend that the crossing was hazardous because nearby buildings and poles could obstruct the driver's view of a train, and box cars parked on an industrial spur track on the opposite side of the crossing could create a false visual cue of a stopped train on the tracks.

Norfolk submitted affidavits demonstrating that the flashers were operating when the train that struck Ms. Smith approached the crossing. Further, the train engineer's affidavit states that he was sounding the train whistle as required by regulations from the time the train reached the whistle post east of the crossing to the time of the collision. The affidavit of D.L. Thomas, a Norfolk employee, states that on September 20, 1988, and again on October 6, 1988, shortly after the accident, he inspected the automatic flashers, and they were operating as intended at both times.

In *Johnson v. Consolidated Rail Corp.*, 797 F.2d 1440, 1444–45 (7th Cir.1986), the Seventh Circuit defined an extrahazardous railroad crossing as one so peculiarly dangerous that a person in the ordinary exercise of prudence cannot use it safely. The court also determined that the railroad had no duty to install additional warning devices at the crossing unless it was extrahazardous. In this case, the plaintiffs' evidence that the flashers malfunctioned and that poles and buildings near the tracks obstructed the view of motorists is insufficient to support a conclusion that the Heaton Street crossing was so peculiarly dangerous that a motorist could not safely cross it. Therefore, the court concludes

---

1. Norfolk claimed that Ms. Spicer's original affidavit was inadmissible and ambiguous because it stated, "On several occasions, on or before October 6, 1988, I have personally witnessed the flashers operate at the railroad grade crossing when there were no trains present." Norfolk claims this statement lacks foundation, and that it fails to indicate when Ms. Spicer witnessed this malfunction. Further, Norfolk argues, Ms. Spicer could have witnessed flashers operating when a train was stopped out of sight or approaching at a slow speed.

Ms. Spicer's supplemental affidavit states that, "Around October 6, 1988, and for at least one year prior thereto, I had occasion to cross the railroad tracks at Heaton Street in Knox on an almost daily basis," and that, "During said time period, I saw the flashing lights activated at the Heaton Street crossing when no train was present or approaching and this occurred on a regular basis." This supplemental affidavit addresses the foundation and time concerns Norfolk raises. Norfolk's arguments as to other possible reasons for the flashers operating go to the weight of the evidence and not the admissibility. Therefore, the court will consider the supplemental affidavit in determining this motion.

that, pursuant to 45 U.S.C. § 434, the federal law preempts the claim that Norfolk negligently failed to install adequate warning devices at the Heaton Street crossing.

### 2. *Train Speed*

█ Norfolk argues that § 434 also preempts the claim that the train was travelling at an excessive speed. It is undisputed that the train was travelling at 28 m.p.h. as it approached the Heaton Street crossing, as demonstrated by Norfolk's pulse data recorder tape. The engineer's affidavit states that he saw Ms. Smith's automobile and struck it before he had time to react. He applied the brake immediately after the train struck the automobile.

The Secretary of Transportation has promulgated regulations governing train speeds. Maximum speeds are determined according to classifications of railroad tracks. It is undisputed that the track at the Heaton Street crossing is a Class 4 Track, and the maximum allowable speed of freight trains on Class 4 tracks is 60 m.p.h. 49 C.F.R. § 213.9. Therefore, Norfolk contends, it was travelling within the speed limit allowed by federal law, and a state negligence claim of excessive speed is preempted.

In *Consolidated Rail Corp. v. Smith*, 664 F.Supp. 1228 (N.D.Ind.1987), this court determined that 45 U.S.C. § 434, which provided for state adoption of an additional or more stringent law when necessary to reduce local safety hazards, did not empower municipalities to pass ordinances regulating the speed of trains. Therefore, 45 U.S.C. § 434 preempted municipal ordinances regulating train speed. Similarly, *Grand Trunk Western Railroad Co. v. Town of Merrillville*, 738 F.Supp. 1205 (N.D.Ind.1989), and *Santini v. Consolidated Rail Corp.*, 505 N.E.2d 832 (Ind.App. 1987), determined that municipal ordinances were preempted by the same statute, and that such ordinances could not co-exist with federal law.

In *Easterwood*, 933 F.2d at 1553, the Eleventh Circuit left intact the district court's decision that the claim that the train was travelling at an excessive speed was preempted by federal law:

We note that the question of train speed has been addressed by Congress through the Secretary of Transportation. The Secretary has established regulations governing the maximum speed for passenger and freight trains on various classes of track.... We therefore find this claim to be pre-empted since Congress has stated that as soon as the Secretary has established a safety regulation all state regulations governing the same area are preempted.

*Easterwood*, 933 F.2d at 1553 (citation omitted). These persuasive authorities lead the court to conclude that the federal regulations governing the speed of trains preempts the plaintiffs' claim that Norfolk's train was travelling at an excessive speed when it struck Ms. Smith's vehicle.

### 3. *Locomotive Headlights*

█ The plaintiffs claim that Norfolk negligently failed to equip its train with an adequate headlight. Again, Norfolk argues that the plaintiffs' claim is preempted by federal law. The plaintiffs do not address this argument in their response.

The train engineer's affidavit states that the train's headlight was on bright as the train approached the Heaton Street crossing; there is no evidence to the contrary. There is no dispute that the train's headlight was operating properly and burning brightly at the time of the accident.

According to 49 C.F.R. § 229.125, "each locomotive used in the road service shall have a headlight that produces at least 200,000 candela." In *Marshall v. Burlington Northern, Inc.*, 720 F.2d at 1153, the court determined that Burlington complied as a matter of law with its duty to provide locomotive warning devices when it met the requirements of this and other sections of the Code of Federal Regulations. In *Marshall*, the plaintiff claimed that the train's headlights were inadequate because they made it difficult to judge the train's distance and speed, and that strobe and oscillating lights would have been more effective. The court concluded that federal law preempted this claim.

As with the plaintiffs' other claims as to the adequacy of the warning devices and the train's speed, the court concludes that federal law preempts the claim that the train's headlight was inadequate.

### Negligence of the Parties

 Norfolk claims that the evidence reveals no negligence on its part, and that Ms. Smith's negligence was the sole proximate cause of the accident. Finally, Norfolk claims that the plaintiffs are barred from recovery under the Comparative Fault Act, IND.CODE 34-4-33-4, because Ms. Smith's fault constituted more than fifty percent of the fault in causing the accident.

As noted above, the warning devices and headlight met federal requirements and the train was running at a safe speed at the time of the accident. Affidavits of the engineer and two witnesses working at nearby businesses show that the train whistle sounded shortly before the accident. The plaintiffs submit that the train engineer did not keep a proper lookout, and note that the engineer did not slow the train until after impact with Ms. Smith's car, even though the engineer saw another car cross the tracks shortly before Ms. Smith's car entered the crossing.

Norfolk contends that Ms. Smith's negligent failure to yield the right of way is the sole cause of the accident. Indiana law requires a motorist approaching a railroad crossing to stop within fifty feet, but not less than ten feet, of the nearest track and not to proceed when: a clearly visible signal gives warning; a train emits an audible signal; or an approaching train is plainly visible and in hazardous proximity to the crossing. IND.CODE 9-4-1-106. The evidence demonstrates that the warning signals and proximity of the train gave rise to Ms. Smith's duty to stop as she approached the crossing. However, as the affidavit of the train engineer shows, Ms. Smith's vehicle entered the crossing in front of the train.

Norfolk argues that its engineer had a right to assume that Ms. Smith would comply with the law and stop at the crossing.

Further, Norfolk argues that Ms. Smith would not have been injured but for her failure to comply with the law. In *New York Central Railroad Co. v. Glad,* 242 Ind. 450, 179 N.E.2d 571 (1962), the Indiana Supreme Court held that it was a matter of law whether the motorist's conduct constituted contributory negligence which proximately caused his injury. In that case, the motorist proceeded across the track although his view was obstructed. The motorist violated his statutory duty by proceeding despite the warnings. *Glad,* 179 N.E.2d at 576. In *Gasich v. Chesapeake & Ohio Railroad Co.,* 453 N.E.2d 371, 374-76 (Ind.App.1983), as in *Glad* and in this case, the plaintiff claimed that the motorist's view was obstructed and the motorist was not aware of the train's approach. The train whistle alerted another motorist that a train was approaching. Because of the audible signal, the court rejected the claim that the train was not visible and, therefore, the motorist did not have the duty to stop as provided in IND.CODE 9-4-1-106.

Norfolk argues that in this case, as in *Glad* and *Gasich,* the motorist approaching the crossing had a duty to stop because of the warnings of the approaching train. The plaintiffs argue that because the flashers "chronically malfunctioned", they did not give warning and, therefore, did not create a duty to stop as provided in the statute. They submit that the chronic malfunctioning made the devices less likely to warn a motorist of the oncoming train.

Norfolk argues that the warning lights' chronic flashing did not relieve Ms. Smith of the statutory duty to stop even if the chronic flashing led her to assume that a train was not coming, citing *Witham v. Norfolk & Western Ry. Co.,* 535 N.E.2d 1197, 1200-03 (Ind.App.1989), in which the court determined that the motorist who proceeded through a train crossing violated IND.CODE 9-4-1-106(a) and was contributorily negligent, notwithstanding the fact that the chronically flashing lights diminished their value as warning devices. *See also Wabash R. Co. v. McNown,* 53 Ind. App. 116, 99 N.E. 126 (1912); *Getman v. Indiana Harbor Belt Railroad Co.,* 172

Ill.App.3d 297, 122 Ill.Dec. 298, 526 N.E.2d 557 (1988).

In addition to the flashing lights, Ms. Smith should have been alerted by the whistle and the train headlight. The plaintiffs argue that because it was a cold morning, Ms. Smith must have had her car windows closed, and she would not have heard the train whistle. Two witnesses, however, heard the whistle from inside their work places near the crossing. The plaintiffs also argue that the train was not visible because of obstructions at the crossing and the curve of the track. The *Witham* court noted that there were genuine issues of fact regarding whether the plaintiff's failure to heed the visible train and audible signal violated IND.CODE 9-4-1-106(c) and (d). However, the court did not discuss these matters because it concluded that the plaintiff was contributorily negligent in violating subsection (a) of the statute. However, the Indiana Supreme Court reversed, stating that:

> A violation of Ind.Code § 9-4-1-106(a) is not established merely upon a showing that a driver disregarded an operating signal device, but it must be shown that such device was "clearly visible" and "gave warning." *Consolidated Rail Corp. v. Thomas*, (1984), Ind.App., 463 N.E.2d 315, 322.

\* \* \* \* \* \*

In addition, there was an eventual dispute as to whether a driver's view of an oncoming train was obstructed, whether the bell and whistle were rung and blown as required by statute, and whether Witham had brought his car to a complete stop before proceeding to the crossing.

Because any doubt as to the existence of a factual issue should be resolved against the moving party, we find that it was error to grant summary judgment upon a finding of contributory negligence. The facts clearly demonstrate genuine issues regarding whether the notoriously malfunctioning flashers "gave warning" so as to give rise to a possible statutory violation, and even if so, whether Witham acted as would a reasonable person under similar circumstances who desired to comply with the law.

*Witham v. Norfolk & Western Ry. Co.,* 561 N.E.2d 484, 485-86 (Ind.1990).

In light of the Indiana Supreme Court's decision, it appears that the court cannot find, as a matter of law, that Ms. Smith violated IND.CODE 9-4-1-106. Therefore, Norfolk's claims that Ms. Smith's negligence was the sole proximate cause of the accident which led to her death, or that Ms. Smith's comparative fault constituted more than fifty percent of the fault involved in the accident, must fail.

The court notes that *Witham* was decided under the contributory negligence standard, and that the comparative fault standard applies to this case. However, under either standard, "Allocation of each party's proportionate fault is a question for the trier of fact ... except where there is no dispute in the evidence and the fact finder could come to only one conclusion." *Walters v. Dean*, 497 N.E.2d 247, 254 (Ind.App. 1986). In this case, there is a dispute over the allocation of the parties' fault, and the ultimate determination of the parties' fault must await the trier of fact.

*Conclusion*

For the foregoing reasons, the defendant's motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART as follows: the motion is GRANTED as to the plaintiffs' claims that the defendant failed to install additional protection at the railroad crossing, that the defendant failed to install an adequate headlight on the train, and that the train was travelling at an excessive speed, and the motion is DENIED as to all other claims.

SO ORDERED.